## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VELVET CLAUD-CHAMBERS et al.,      :
                                   :
    Plaintiffs,                    :
                                   :
  v.                               :      No. 3:04CV1335(DJS)
                                   :
CITY OF WEST HAVEN and WEST        :
HAVEN REDEVELOPMENT AGENCY,        :
                                   :
    Defendants.                    :

### MEMORANDUM OF DECISION

On August 11, 2004, plaintiffs filed this action alleging that defendants, City of West Haven and West Haven Redevelopment Agency, took plaintiffs' property without just compensation by way of inverse condemnation in violation of the Fifth Amendment to the U.S. Constitution and deprived plaintiffs of due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.  On January 26, 2005, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, defendants filed a motion for summary judgment (dkt. # 16).  For the reasons set forth herein, defendants' motion is **GRANTED.**

### I. BACKGROUND

Plaintiffs are former owners of condominium units within the same condominium development in the City of West Haven. Defendants are the City of West Haven and West Haven Redevelopment Agency, a quasi-governmental agency authorized to develop and implement redevelopment plans on behalf of the City

of West Haven.  On June 23, 1998, defendants initiated eminent
domain proceedings by filing in Connecticut Superior Court a
statement of compensation for the taking of plaintiffs' property
in accordance with Section 8-129[1] of the Connecticut General
Statutes.  (See Dkt. # 18, ¶ 3.)  Then on August 28, 1998, a
certificate of taking was filed in the Connecticut Superior Court
in accordance with Section 8-129[2] of the Connecticut General
Statutes.  (See id., ¶ 4.)  Plaintiffs did not appeal the filing
of the statement of compensation as provided in Section 8-132[3] of
the Connecticut General Statutes. (See id., ¶ 5.)

On September 1, 1999, plaintiffs filed a complaint in the
Connecticut Superior Court alleging claims brought pursuant to
Section 48-17(b)[4] of the Connecticut General Statutes; Article
First, Section 11, of the Connecticut State Constitution; as well

---

[1]See Section 8-129 of the Connecticut General Statutes
(providing for the redevelopment agency to file a statement of
compensation and a deposit with the Clerk of the Superior Court).

[2]See Section 8-129 of the Connecticut General Statutes
(providing for the issuance of a statement of a certificate of
taking).

[3]See Section 8-132 of the Connecticut General Statutes
(providing that any person claiming to be aggrieved by the
statement of compensation may apply for review of the statement
in the Superior Court).

[4]See Section 48-17b of Connecticut General Statutes
(providing for reimbursement of reasonable costs to a plaintiff
awarded judgment in an inverse condemnation proceeding against
the State).

as the Fifth and Fourteenth Amendments to the Constitution by way
of 42 U.S.C. § 1983 and 42 U.S.C. § 1988.  The complaint alleged,
with respect to each plaintiff, that

> [f]or a period of [sic] beginning in 1993 and running
> continuously to June 23, 1998, the defendants carried
> out a course of conduct designed to bring about, and/or
> causing, the substantial destruction of the plaintiff's
> aforesaid real estate.

(Dkt. # 19-1, Exhibit A, Counts 1-30, ¶ 6.)  The complaint
further alleged, with respect to each plaintiff, that defendants

> encouraged by their actions the deterioration of the
> plaintiff's property and neighborhood prior to the
> actual taking of the property and thus took the
> plaintiff's property without just compensation in a
> manner constituting inverse condemnation by an
> unconstitutional taking.

(Id., Counts 1-30, ¶ 10.)  Specifically, plaintiffs alleged,
among other things, that defendants purchased and failed to
maintain adjacent properties, (id., Counts 1-30, ¶ 6A); reduced
police presence in the area, (id., Counts 1-30, ¶ 6B); publicly
announced, over a long period of time, that the area would be
taken by eminent domain, (id., Counts 1-30, ¶ 6C); declared the
area to be a "slum" and "blighted," (id., Counts 1-30, ¶ 6D); and
entered the area with bullhorns and printed flyers to encourage
tenants to leave the area, (id., Counts 1-30, ¶ 6G).
Additionally, plaintiffs alleged that, at a public meeting on
January 22, 1997, the Mayor of the City of West Haven discussed
plans for the razing of the buildings and encouraged tenants to
move away, (id., Counts 1-30, ¶ 6J); that on March 14, 1997, the

-3-

Mayor issued a written statement announcing the City's intention
to seize the area in the near future, (id., Counts 1-30, ¶ 6k);
and, thereafter, in May of 1997, the City entered into a
contract with Devcon Enterprises, Inc. for the purpose of selling
the property in the area for commercial development, (id., Counts
1-30, ¶ 6E).

In response to the complaint, defendants filed a motion for
summary judgment, which the court granted.  The court entered
judgment in favor of defendants as to "all counts and all
plaintiffs by way of the complaint dated September 1, 1999."
Claude-Chambers v. West Haven, No. CV 99 0430562, 2002 Ct. Sup.
1380, at 1384 (Conn. Super. Ct. Feb. 4, 2002) (Loislaw.com).  The
court concluded that there could be no claim for inverse
condemnation where the property was taken by eminent domain.  See
id.  The court also found that plaintiffs' civil rights claims
had been previously adjudicated by the United States District
Court for the District of Connecticut in Anita Cotton, et al. v.
City of West Haven et al., No. 3:97CV2320, Ruling on Motion for
Summary Judgment (D. Conn. Mar. 31, 2000).  See Claude-Chambers,
at *1384 (Loislaw.com).  Plaintiffs appealed the grant of summary
judgment to the Connecticut Appellate Court, which affirmed the
Superior Court's judgment.  See Claude-Chambers v. West Haven, 79
Conn. App. 475, 480 (2003).  Plaintiffs then filed a petition for
certification of appeal to the Connecticut Supreme Court, which

-4-

the Supreme Court denied on November 4, 2003.  See <u>Claude-</u>
<u>Chambers v. West Haven</u>, 266 Conn. 924 (2003).

On August 11, 2004, plaintiffs filed the present action
(dkt. # 1) alleging that defendants,

> [f]or a period of [sic] beginning in 1993 and running
> continuously to June 23, 1988, . . . carried out a
> course of conduct designed to bring about, and/or
> causing, the substantial destruction of the plaintiffs'
> aforesaid real estate.

(<u>Id.</u>, ¶ 6.) Plaintiffs further allege that defendants

> encouraged by their actions the deterioration of the
> plaintiffs' property and neighborhood prior to the
> actual taking of the property and thus took the
> plaintiffs' property without just compensation in a
> manner constituting inverse condemnation by an
> unconstitutional taking in violation of the Fifth
> Amendment to the United States Constitution and a
> deprivation of substantive due process of law in
> violation of the Fourteenth Amendment to the United
> States Constitution.

(<u>Id.</u>, ¶ 10.)  Specifically, plaintiffs allege, among other
things, that defendants purchased and failed to maintain adjacent
properties, (<u>see</u> <u>id.</u>, ¶ 6A); reduced police presence in the area,
(<u>see</u> <u>id.</u>, ¶ 6B); publicly announced, over a long period of time,
that the area would be taken by eminent domain, (<u>see</u> <u>id.</u>, ¶ 6C);
declared the area to be a "slum" and "blighted," (<u>see</u> <u>id.</u>, ¶ 6D);
and entered the area with bullhorns and printed flyers to
encourage tenants to leave the area, (<u>see</u> <u>id.</u>, ¶ 6G).
Additionally, plaintiffs allege that, at a public meeting on
January 22, 1997, the Mayor of the City of West Haven discussed
plans for the razing of the buildings and encouraged tenants to

move away, (see id., ¶ 6J); that, on March 14, 1997, the Mayor issued a written statement announcing the City's intention to seize the area in the near future, (see id., ¶ 6k); and, thereafter, in May of 1997, the City entered into a contract with Devcon Enterprises, Inc. for the purpose of selling the property in the area for commercial development, (see id., ¶ 6E).

## II.   DISCUSSION

In the present action, defendants contend that, as a matter of law, summary judgment should enter in their favor because the claims made by plaintiffs in the present action are (1) barred by the doctrine of res judicata, (2) barred by the three-year statute of limitations set forth in Section 52-577 of the Connecticut General Statutes, and (3) unsuitable for litigation in this court based on the Rooker-Feldman doctrine.  (See Dkt. # 17 at 1-2.)

### A.   STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to

which [it] has the burden of proof." <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to
demonstrate the absence of any material factual issue genuinely
in dispute.'" <u>American Int'l Group, Inc. v. London Am. Int'l
Corp.</u>, 664 F.2d 348, 351 (2d Cir. 1981) (quoting <u>Heyman v.
Commerce & Indus. Ins. Co.</u>, 524 F.2d 1317, 1319-20 (2d Cir.
1975)).  A dispute concerning a material fact is genuine "'if
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>,
963 F.2d 520, 523 (2d Cir. 1992) (quoting <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  The court must view all
inferences and ambiguities in a light most favorable to the
nonmoving party.  <u>See</u> <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d
Cir. 1991).  "Only when reasonable minds could not differ as to
the import of the evidence is summary judgment proper." <u>Id.</u>

## B.   RES JUDICATA

Defendants argue that plaintiffs are precluded by the
doctrine of res judicata, or claim preclusion, from asserting the
claims set forth in their complaint because these claims were
adjudicated on the merits by the Connecticut Superior Court.
(<u>See</u> Dkt. # 17 at 11-12.)  For the purposes of res judicata, "[a]
final judgment on the merits of an action precludes the parties
or their privies from relitigating issues that were or could have

been raised in that action." Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).

In deciding whether to give preclusive effect to the state court judgment, this court must determine which law applies. The Supreme Court has directed federal district courts to follow the legislative pronouncement of the Full Faith and Credit Act, 28 U.S.C. § 1738 (2000), to "'give the same preclusive effect to a state-court judgment as another court of that State would give.'" Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S. Ct. 1517, 1527 (2005) (quoting Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986)). In Connecticut, "'an existing final judgment rendered upon the merits . . . by a court of competent jurisdiction'" will have preclusive effect for the purposes of res judicata. Efthimiou v. Smith, 268 Conn. 499, 506 (2004) (quoting Wade's Dairy Inc. v. Fairfield, 181 Conn. 556, 559 (1980)). If it is determined that such a final judgment exists, that final judgment "'is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.'" Efthimiou, 228 Conn. at 506 (quoting Wade's Dairy Inc., 181 Conn. at 559) (emphasis omitted).

In Connecticut, summary judgment constitutes a final judgment rendered upon the merits for the purposes of res

judicata.  <u>See</u> <u>Daoust v. McWilliams</u>, 49 Conn. App. 715, 726-727
(1998) (citing <u>Connecticut National Bank v. Rytman</u>, 241 Conn. 24,
43-44 (1997)).  In deciding plaintiffs' claims, the Connecticut
Superior Court granted summary judgment in favor of defendants
"as to all counts and all plaintiffs by way of the complaint
dated September 1, 1999."  <u>Claude-Chambers</u>, at *1384
(Loislaw.com).  The court held that "there is no inverse
condemnation claim where the properties have been taken by
eminent domain."  <u>Id.</u>  The court further held that "neither
defendant has violated 42 U.S.C. § 1983 or § 1988" and that

> [t]he issue of whether or not the taking of the
> plaintiffs' properties as part of the Saw Mill
> redevelopment plan violated the Connecticut
> Constitution or the United States Constitution or the
> civil rights of the plaintiffs has been litigated in
> the United States District Court in the matter of <u>Anita
> Cotton, et al. v. City of West Haven et al.</u> . . .  That
> action was also consolidated with the matter of <u>Thomas
> C. Guernsey v. City of West Haven</u> . . . . The court's
> granting of the defendants' motion for summary judgment
> in those matters is dispositive of the constitutional
> claims in the present case.

<u>Id.</u> at *1383.  Additionally, the court found that

> [t]here is nothing in the record of this case to
> support the plaintiffs' claims that the taking of their
> properties by the defendants was not justified or that
> they were not justly compensated, through the
> condemnation process.

<u>Id.</u> at *1384.

The claims filed and the facts alleged in the present action
are identical to those adjudicated upon the merits in the state
court action.  (<u>See</u>, <u>infra</u>, at 2-6.)  The claims are between the

same parties.  Therefore, the judgment of the Connecticut
Superior Court precludes this court from hearing plaintiffs'
claims in the present action.

C.  EXCEPTION TO RES JUDICATA

Notwithstanding the preclusive effect of the state court
judgment, plaintiffs claim that Connecticut law, which apparently
bars litigants from bringing an inverse condemnation claim for
properties already taken through eminent domain, foreclosed them
from a full and fair opportunity to litigate their constitutional
claim. Plaintiffs argue that Connecticut law "prevent[s] persons,
whose property is devalued by inverse condemnation and then later
taken by traditional condemnation, from recovering in state court
for losses caused by the inverse condemnation." (Dkt. # 22 at
4.)  Plaintiffs argue that the court should hear plaintiffs
claims pursuant to an exception to the res judicata doctrine.
(Id. at 9.)

Plaintiffs rely upon Allen v. McCurry, 449 U.S. 90 (1980).
In Allen, the Supreme Court held that the preclusive effect of a
state court judgment may be asserted as a defense in a suit
brought pursuant to § 1983.  The Supreme Court also stated that §
1983 was intended to provide a federal remedy (1) where state
substantive law is facially unconstitutional, (2) where state
procedural law, though adequate in theory, is inadequate in

practice, and (3) where state procedural law is inadequate to
allow full litigation of a constitutional claim, and that

> [t]his understanding of § 1983 might well support an
> exception to res judicata . . . where state law did not
> provide fair procedures for the litigation of
> constitutional claims, or where a state court failed to
> even acknowledge the existence of the constitutional
> principle on which a litigant based his claim.

Id. at 101.  The Supreme Court, however, also cautioned that its
view "lends no strength to any argument that Congress intended to
allow relitigation of federal issues decided after a full and
fair hearing in a state court simply because the state court's
decision may have been erroneous," id., and that

> nothing in the language or legislative history of §
> 1983 proves any congressional intent to deny binding
> effect to a state-court judgment or decision when the
> state court, acting within its proper jurisdiction, has
> given the parties a full and fair opportunity to
> litigate federal claims, and thereby has shown itself
> willing and able to protect federal rights,

id. at 103-104.

Because the state court has provided a full and fair
opportunity for plaintiffs to prosecute their claims, no
exception to the res judicata principle applies.  First, the
Connecticut Superior Court did not ignore plaintiffs'
constitutional question; on the contrary, the court expressly
held that "neither defendant violated 42 U.S.C. § 1983 or §
1988." Claude-Chambers, at *1383 (Loislaw.com).  Moreover, this
decision was affirmed by the Connecticut Appellate Court, and the
Connecticut Supreme Court denied review.  Second, fair procedures

-11-

were provided for plaintiffs in the state court action.  The
Superior Court held that an inverse condemnation action does not
lie after a property is taken by eminent domain because the court
would essentially be revisiting the same issues that were
addressed in the eminent domain proceeding.  See id. at *1384.
The court further stated that

> plaintiffs received compensation for the properties
> through  the condemnation process, pursuant to the
> procedures outlined in the General Statutes.  *The
> plaintiffs chose not to contest these amounts of
> compensation by arguing the value of their properties
> or the devaluation of their properties during the
> condemnation process*.

Id. (emphasis added).  The Connecticut Appellate Court also noted
that

> plaintiffs received just compensation through the
> compensation proceedings and chose not to challenge the
> value assigned to the property during those
> proceedings.  Furthermore, they failed to challenge the
> valuation pursuant to General Statutes § 8-132.  If the
> plaintiffs were unsatisfied with the compensation that
> they received, an appeal should have been taking during
> the compensation process.  The plaintiffs' inverse
> condemnation claim would serve only to relitigate the
> issues that were resolved in the eminent domain action.

Claude-Chambers, 79 Conn. App. at 479.  According to § 8-132,
plaintiffs could have contested the valuation of the property
being taken by the government during the eminent domain
proceedings.  Plaintiffs' failure to appeal the valuation of
their property at the time of the taking foreclosed them from
relitigating the issue in state court through an inverse
condemnation proceeding.  See Claude-Chambers, at *1384

(Loislaw.com).  Therefore, a full and fair opportunity to litigate plaintiffs' constitutional claim was provided; it is not the shortcomings of Connecticut law but rather plaintiffs' failure to avail themselves of existing procedures that has foreclosed their claims presented here.

Alternatively, plaintiffs claim that availing themselves of the existing procedures would have been futile because, once the government initiates the eminent domain process, Connecticut law does not allow for a valuation of the property that includes a decline in property value occasioned by pre-eminent domain activities of the government.  (See Dkt. # 22 at 3-4.)  This argument is not persuasive for two reasons.  First, plaintiffs do not present facts indicating that they even attempted to raise the issue during the eminent domain process.  Second, plaintiffs interpretation of Connecticut law has recently been disavowed. See Albahary v City of Bristol, 276 Conn. 426, 436 (2005) (holding that "the Appellate Court properly determined that, generally, under principles of inverse condemnation, a property owner may seek compensation in an eminent domain proceeding for pretaking damages caused by the condemnor.").  Therefore, there is no basis to conclude that, during the eminent domain proceedings, a court would have absolutely foreclosed plaintiffs from appealing the value of their property to include any

devaluation of the property caused by pre-eminent domain activities of the government.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (dkt. # 16) is **GRANTED.**  Judgment for the defendants shall enter on all counts of the complaint.[5]  The Clerk of the Court shall close this file.

So ordered this 29th day of March, 2006.


**/s/DJS**
_____
    **DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**

_____

[5] To the extent plaintiffs assert substantive due process claims, these claims fail for the same reasons set forth herein.

-14-